OPINION
{¶ 1} Edward G. Tracy, the father of his minor children, Frank and Nicholas Tracy, (hereinafter "the boys") is appealing, pro se, from the order of the Court of Common Pleas of Miami County, Ohio, Juvenile Division, finding the boys to be neglected but granting custody to their mother (hereinafter "Sharon"), but with certain protective conditions, including which and specifically separately ordered by the court that Mr. Tracy[1] shall have no visitation nor contact with his children. "The no contact order pursuant to his parole conditions will remain in effect regarding any contact with his children, Sharon, and his stepson, Adam. Should Mr. Tracy's parole conditions change, Mr. Tracy can file with this Court a Motion for Visitation. Before filing his Motion, Mr. Tracy shall complete a psychological evaluation and abide by his parole conditions." (Par. 4 of Disposition Entry, Docket 98). This is the crux of Mr. Tracy's appeal.
 {¶ 2} Mr. Tracy appeared pro se in the hearings of the case by the magistrate and is before us pro se. As such, he has filed numerous motions and requests to the magistrate in the trial court and, on appeal, has filed voluminous briefs which, as the appellee has pointed out in its brief, fail to argue any assignment of error, and did not specify which of the trial court's rulings he alleges were made in error. Moreover, he has neither offered any legal authority in support of any of the inferred, by the appellee, assignments of error. Undoubtedly, if Mr. Tracy had retained counsel or allowed one to be assigned to him as he is indigent, his counsel would have provided some coherent focus for his arguments. However, Mr. Tracy stated for the record during the August 22, 2002, hearing that he did not trust any lawyers in Miami County (Tr. 60), a sentiment which he restated verbally during oral argument before this court. We note here that pro se civil litigants are not to be accorded greater rights than they would have if represented by counsel, and they must accept the results of their own mistakes and errors. Meyersv. First Nat. Bank of Cincinnati (1981), 3 Ohio App.3d 209, 210.
 {¶ 3} The facts of this matter in the proceedings below are generally taken from the statement of the facts and case presented to us in the appellee's brief. Mr. Tracy did not include any statement of facts or the procedure of this civil matter as such in his briefs.
 {¶ 4} In May of 2002, the Miami County Children Services Board investigated allegations of neglect and dependency concerning the boys, the children of Sharon and Edward Tracy. Mr. Tracy is a convicted sexual offender of juveniles and has been incarcerated for two convictions in Michigan and a third conviction in Miami County. (Tr. 17-23, 6-17-02 hearing). When he was subsequently released on parole in Ohio, he was placed under restriction that he have "no direct or indirect contact with any children, a condition to which he agreed." (Tr. 4, id.). Later, his parole officer softened this sanction by allowing Mr. Tracy to have "supervised contact with his children" but not to be at home alone with them and either his wife or his stepson Adam would have to be present. (Tr. 25, 8-22-02 hearing). Mr. Tracy subsequently violated even this new condition by being seen by his parole officer at Sharon's home without the presence of either Sharon or Adam. Sharon testified that Mr. Tracy had lied to her by telling her that it was alright for him to be in the house as long as the kids were in another room from him. (Tr. 106-107, 8-22-02 hearing). Mr. Tracy was arrested on that day and this incident directly led to the filing of the complaint alleging neglect and dependency. It should be noted here that not only had Mr. Tracy been found guilty three times of sexual offense against a minor, but he was also determined in February of 1998 to be a sexual predator by the Common Pleas Court of Miami County, Ohio.
 {¶ 5} The first hearing in this matter was held on June 17, 2002, where the magistrate carefully and meticulously explained to Sharon the allegations in the complaint and the reasons for them. Mr. Tracy did not attend this as he was in prison. Sharon stated to the magistrate that she doesn't want to have any further contact with her husband, and the magistrate warned her that she was going to put on an order restraining Mr. Tracy from contacting his children "in any fashion." (Tr. 38). The matter was then set for adjudicatory hearing on August 15, 2002.
 {¶ 6} At that August 15 hearing, Mr. Tracy was present. At this time, as previously noted, Mr. Tracy waived his right to appointed counsel. During this hearing, Mr. Tracy first raised his polygraph issue, which he argued throughout the proceedings and on appeal also. The issue was his request that the court appoint a polygraph to be performed on him. The court overruled that motion but pointed out to Mr. Tracy that he certainly had the right to arrange one for himself, but not at the expense of the court. (Tr. 16-17, id.). Mr. Tracy then requested a continuance to allow him time to prepare and asked the court to issue subpoenas to eight people he wants to call as his witnesses. The court noted it would issue those subpoenas and granted an extension until August 22, 2002.
 {¶ 7} At the opening of the August 22, 2002, adjudicatory hearing, Sharon was present with her attorney, who stated for the record that his client admitted to neglect in permitting contact by Mr. Tracy with the boys in violation of court order and violation of parole restriction, but also stated that she had not admitted to being a neglectful mother other than "in that regard." Mr. Tracy interjected to that point: "She never was." (Tr. 7).
 {¶ 8} Mr. Tracy's parole officer, Jenny Christner, testified regarding his conviction in Michigan in 1981 of two counts of criminal conduct and in 1984 of criminal sexual conduct, all with minor children. She testified he served 1½ years in prison in Ohio. She also testified as to the incident in May which led to the current complaint, and that Mr. Tracy served 75 days in prison for that incident in violation of his parole conditions. She testified that it is "absolutely in the best interest of those two kids" that Mr. Tracy have no contact with them at all. (Tr. 30, id.). She noted that he will be under supervised parole until approximately October of 2004, with the condition of no contact with the boys or his wife or his stepson, Adam, and that Mr. Tracy had signed this sanction himself agreeing to it. (Tr. 31, id.).
 {¶ 9} After the State rested, Mr. Tracy called the witnesses that he had subpoened, but three of them had not shown up. Later in the proceedings, and on appeal, Mr. Tracy has consistently argued that the court should be responsible for the appearance of his witnesses. During the course of his questioning of his witnesses that did appear, he raised numerous arguments about many factual issues, as if he were testifying himself. Three times during the course of this hearing, the magistrate attempted to focus Mr. Tracy on three specific allegations in the complaint, that is first, was he convicted three times for sexual offenses; second, did he realize that on April 17, [2002], he had a new parole restriction that he must have no contact with his children to which he had agreed and third, did he violate that April order. (Tr. 88-89, id.). The magistrate had to repeat these admonitions twice again during the hearing. (Tr. 93-94, Tr. 97-98, id.). Mr. Tracy continued to argue things that were not before the magistrate in this adjudicatory hearing, but would be heard at a later dispositional hearing. Finally, the magistrate found him in contempt, that she was going to be adjourning this hearing, and that the judge can deal with the issues of the contempt, to which Mr. Tracy replied: "I understand." (Tr. 99, id.). The magistrate ruled at the end of the hearing that the interim orders of protective supervision will remain in effect, but that the boys will remain with their mother. The following exchange occurred at the end of the hearing:
 {¶ 10} "Edward Tracy: So what's you're saying is that I still have no contact with her or the kids right? I can't see them.
 {¶ 11} "Magistrate: Well that's, that's not just my order. That's I think out of the, at this point out of the part of the current order out of the criminal case. So it's not so much my removing the kids from her care, but you would be sent, looking at prison if you violate the, the order from the general division in the criminal case." (Tr. 111, id.).
 {¶ 12} At the dispositional hearing, subsequently held on September 12, 2002, the magistrate first noted that Sharon, represented by counsel, had reached an agreement with the Children's Services Agency to place the boys in her custody with an order for protective supervision. This means legal custody and not temporary custody. (Tr. 2-3). Although Sharon was not present, Mr. Tracy was, and the magistrate asked him: "Do you agree that the children should remain with Mrs. Tracy?" to which he replied: "Oh, yes." (Tr. 3, id.). The magistrate further asked him: "So that's fine with you?" to which he replied: "Yes," and "That's what I've been fighting for." (Tr. 4, id.). The representative from Children's Services then recited for the record the protective conditions governing Sharon's custody of the boys, including that pursuant to Mr. Tracy's parole conditions, Sharon would not allow any contact by Mr. Tracy with the boys as well as with Adam, his stepson. The magistrate then recited for the record the order it will enter, which has already been previously quoted in relevant part.
 {¶ 13} The magistrate's entry of disposition, filed on September 26, 2002, contained the paragraph already quoted regarding Mr. Tracy's opportunity to have no visitation or contact with the boys and, further, ordered that the boys remain in the custody of their natural mother, Sharon Tracy; granted Miami County Children Services Board an order of protective supervision; approved the case plan and document as amended; and ordered the Children Services Agency to investigate the issue of child support. The trial court approved and adopted the magistrate's orders the next day and advised the parties that any of them may file objections within fourteen days.
 {¶ 14} Mr. Tracy timely filed objections, which included a request that the court issue a subpoena to Sharon to appear at "the objection" hearing (Docket 100); a motion for post conviction relief pursuant to R.C. 2953.21; another request for a polygraph examination (Docket 101); a separate motion asking the court to pay for a polygraph "to help present petitioner's post conviction case" by proving petitioner "is telling the truth" (Docket 102); a motion that the court order that "defendant Edward Tracy be prepared with report and recommendation of guardian ad litem" (Docket 103); [the guardian ad litem report had been filed on September 11, 2002 (Docket 97), but was ordered not to be copied without court order]; and, finally, a motion for transcripts of all the hearings.
 {¶ 15} The trial court subsequently overruled all of the objections and all but one of the motions in the following entry filed on October 16, 2002:
 {¶ 16} "On October 7, 2002, Edward Tracy (father of above named children) filed Objections to Magistrate's Decision and Motion for Subpoena (of Sharon Tracy, mother of the children). Under different caption (State of Ohio vs. Edward Tracy) but with the same case numbers, Mr. Tracy filed Petition to Vacate or Set Aside Sentence, Motion for Expert Witness and Motion for Transcript.
 {¶ 17} "The court will first address the Objection to Magistrate's Decision. Juvenile Rule 40(E)(3) reads:
 {¶ 18} "(b) Form of objections. Objections shall be specific and state with particularity the grounds of objection . . .
 {¶ 19} "Mr. Tracy does not state specifically or with particularity any grounds for objections to the Magistrate's decision. Further, his only statement which this court could interpret as a legal objection was, `I do not have no money at all.' The Magistrate's decision does not order Mr. Tracy to pay any money and therefore, this objection has no merit. The Magistrate's decision does order Miami County Child Support Enforcement Agency to investigate issues of child support but until an administrative determination is made, there is no order from which to appeal. The Objections to the Magistrate's Decision are therefore, overruled.
 {¶ 20} "Next Mr. Tracy requested that Sharon Tracy be subpoenaed. Since the court finds no meritorious objection on which to hold a hearing, no hearing will be scheduled and Ms. Tracy's appearance is unnecessary. Said motion is overruled.
 {¶ 21} "Then Mr. Tracy filed what appears to be a motion to set aside a criminal sentence. There is no criminal case in our court and no criminal sentence has [sic] issued. Mr. Tracy has not been indicted as he alleges, nor has he been convicted. Mr. Tracy requests a polygraph examination and there is no provision within the law for this to be court ordered or admissible in a civil proceeding. A law does provide authority for the court to order psychological evaluations, which this court ordered, with the natural consequence being that visitations would be suspended until a mental health professional could provide testimony that the children would be safe in their parent's presence. Dr. Schwartzman's statement was not a threat or meant as a threat. She was merely advising Mr. Tracy of the consequences of his behavior. Mr. Tracy further claims that he did not get to say things that he wanted to say at the August 22, 2002, hearing. Without specific objections, the court has no way of ruling on said objection. Lastly, Mr. Tracy states that these civil proceedings are double jeopardy to his past criminal proceedings from 1997. These proceedings are not criminal and no criminal safeguards apply.
 {¶ 22} "Lastly, Mr. Tracy requests a transcript of all proceedings to prepare an appellant brief and the Court honors this request and orders the clerk to have said transcript prepared at State's expense.
 {¶ 23} "Other than the request for transcript, all other motions are overruled.
 {¶ 24} "The decision of the Magistrate is upheld and becomes the order of the Court as if fully rewritten herein." (Docket 106).
 {¶ 25} Mr. Tracy timely filed a notice of appeal in which he assigned as errors: (1) the overruling of his motion for subpoenas for his witnesses, (2) the overruling of his motion to vacate or set aside the judgment in a post conviction relief remedy, (3) the overruling of his motion for an expert witness, in which he means the polygraph examiner, and (4) the overruling of his objections to the magistrate's decision. We find that insofar as the trial court addressed these objections, its rulings were well supported by substantial and credible evidence and it did not abuse its discretion. We therefore approve and adopt the court's entry overruling the objections and all but one of the motions as our own.
 {¶ 26} As we stated earlier, the crux of Mr. Tracy's appeal is the order that he have no contact with his children or their mother. We infer this from his filed objections to the magistrate's decision which do not present any specific objections but does contain the statement: "I just do not want to live no more without Sharon and our sons." (Docket 99). We infer from that that he is objecting to the no visitation or contact order. We note that this order was actually entered by the magistrate, as we previously noted, not as a new condition but merely a reiteration of Mr. Tracy's parole conditions. We have no jurisdiction to alter his conditions of parole that were entered by a trial court following a criminal case against Mr. Tracy.
 {¶ 27} The assignments of error which both the appellee and ourselves have inferred from Mr. Tracy's voluminous filings of briefs and motions with this court are hereby overruled, and the judgment is affirmed.
BROGAN, J. and GRADY, J., concur.
[1] The complaint in this matter, filed on June 14, 2002, (Docket 1) misspells Tracy as Tracey, and the same spelling appears at numerous times throughout these proceedings. We will recognize the correct spelling without the e. The correction was made during the course of the hearings in this proceeding. See the August 15, 2002, hearing at Tr. 33.